United States Court of Appeals
For the First Circuit


No. 96-2190

ERIC DELGADO-BIAGGI, ET AL.,

Plaintiffs, Appellants,

v.

AIR TRANSPORT LOCAL 501, ET AL.,

Defendants, Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge] 



Before

Torruella, Chief Judge, 
Selya and Stahl, Circuit Judges. 



John Ward Llambias for appellants. 
Malcolm A. Goldstein, with whom Joel C. Glanstein, Manuel Porro- 
Vizcarra, O'Donnell, Schwartz, Glanstein & Rosen, and Lopez-Lay 
Vizcarra & Porro, were on brief for appellees. 



May 5, 1997


STAHL, Circuit Judge. Plaintiff-appellant Eric STAHL, Circuit Judge. 

Delgado-Biaggi1 brought an action against defendants-

appellees Air Transport Local 501 ("Local 501") and the

Transport Workers Union of America, AFL-CIO ("TWU")

(collectively, "the Union") under the Labor-Management

Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. 401 et 

seq., claiming the denial of due process and the arbitrary 

and discriminatory removal of his shop steward position. The

district court granted summary judgment in favor of the

Union, from which Delgado-Biaggi now appeals. Because the

district court's failure to comply with Federal Rule of Civil

Procedure 56(c) denied Delgado-Biaggi a meaningful

opportunity to oppose the Union's summary judgment motion, we

vacate the judgment and remand for further proceedings.

I. I. 

Background and Prior Proceedings Background and Prior Proceedings 

We recite the pertinent facts in the light most

favorable to Delgado-Biaggi, the party opposing summary

judgment. See Hachikian v. F.D.I.C., 96 F.3d 502, 504 (1st 

Cir. 1996).

Delgado-Biaggi joined the Local 501 chapter of the

TWU in 1991 when he began working for American Airlines as a

baggage handler. One year later, Delgado-Biaggi was elected

 

1. Delgado-Biaggi's wife, Nilda Fernandez-Zayas, and their
conjugal partnership are also plaintiffs. For simplicity, we
refer only to Eric Delgado-Biaggi and his claims.

-2- 2

to a union shop-steward position for the bag room, second

shift.2 In September 1993, Delgado-Biaggi bid for a first

shift position, which he obtained because of his seniority.

In October 1993, shortly after Delgado-Biaggi

changed work shifts, the chairman of Local 501 handed him a

letter from Local 501's Executive Vice-President, William

Tlasek, which purported to acknowledge Delgado-Biaggi's

"resignation" of his shop steward's position. In November

1993, Delgado-Biaggi responded to Tlasek by letter, asserting

that he had not resigned as shop steward and that he had a

right to remain in office unless he was duly removed pursuant

to Local 501's bylaws. Tlasek, in turn, responded that

Delgado-Biaggi's shift-change automatically effected his

resignation under Article VII(a) of the union bylaws, which

provides: "A Shop Steward who leaves the unit or shift he was

elected by, will continue to serve at the discretion of the

Executive Board."

Dissatisfied with that response, Delgado-Biaggi

complained again to Tlasek by letter dated January 14, 1994,

also to no avail. Not willing to concede the issue, he then

retained an attorney who, in March 1994, wrote a letter to

Local 501 claiming denial of due process in the removal of

Delgado-Biaggi as steward. The leadership of Local 501

 

2. Shop stewards are union representatives who personally
handle problems that their fellow employees raise concerning
management.

-3- 3

remained unmoved. In April 1994, Delgado-Biaggi's counsel

attempted to appeal by letter to TWU's International

Executive Council. The Council's stated reason for rejecting

the appeal was Delgado-Biaggi's failure to personally file

the letter. Delgado-Biaggi did not resubmit his appeal, but

instead commenced this litigation in June 1994.

On June 13, 1996, after a desultory beginning to

the prosecution of this case, the district court set a trial

date of July 1, 1996. On June 17, the Union responded to the

setting of the trial date by filing a motion for summary

judgment.3 On Friday, June 28, the parties met with the

district court judge in chambers for a non-scheduled

conference. During this meeting, Delgado-Biaggi announced

his intention to oppose the Union's motion for summary

judgment with oral and documentary evidence on the following

Monday, July 1, the scheduled first day of trial.

The following Monday morning, before Delgado-Biaggi

had an opportunity to present his opposing evidence, the

parties were handed an opinion and order granting the Union's

 

3. We note that the Union submitted the June 17, 1996
summary judgment motion well after the court's November 1995
deadline for the filing of the dispositive motion. The court
allowed the untimely motion although, as the record reflects,
the Union did not first seek and obtain leave to file the
motion out of time. See In re San Juan Dupont Plaza Hotel 
Fire Litigation, 45 F.3d 564, 566 (1st Cir. 1995) (explaining 
that summary judgment proponent must obtain permission to
file motion out of time where filing deadline "had long since
passed").

-4- 4

motion for summary judgment. The terse opinion stated that

"[t]he union's actions in [construing Delgado-Biaggi's shift

change as a resignation of shop stewardship] were authorized

by its by-laws, which make perfect sense, since, of course, a

shop steward is of little use if he does not work the shift

he represents." The order concluded that "none of the

union's conduct violates the rights protected under 29 U.S.C.

411." The court did not entertain oral argument on the

motion.

Thereafter, Delgado-Biaggi filed a motion to

reconsider along with a sworn declaration from Jorge

Brignoni, a former Chairman of Local 501. The declaration

stated that union stewardships are "never" withdrawn or

deemed resigned as a result of a shift change, and that

[i]t has never been the practice in
Puerto Rico to consider a change of shift
as an automatic resignation . . . . The
only case where such an interpretation
has been attempted is when Mr. Eric
Delgado was unilaterally removed by the
then Chairman Mr. Rafael Perez.

Delgado-Biaggi further submitted an excerpt from the

deposition of Jose Rodriguez, a Board member, who testified

that the Executive Board had never removed Delgado-Biaggi

from his shop steward position. The district court denied

the motion to reconsider. This appeal followed.

II. II. 

Discussion Discussion 

-5- 5

On appeal, Delgado-Biaggi argues that the district

court prematurely granted summary judgment and that, given

the proper opportunity to respond to the Union's motion, he

would have produced evidence sufficient to preclude summary

judgment. The Union offers a host of arguments in favor of

upholding the court's disposition of the action and insists

that "the district court handled the case properly."

Federal Rule of Civil Procedure 56(c) provides that

a summary judgment motion "shall be served at least 10 days

before the time fixed for the hearing." Fed. R. Civ. P.

56(c). We have interpreted Rule 56(c) to allow an adverse

party at least ten days to respond to a motion for summary

judgment. See Stella v. Town of Tewksbury, 4 F.3d 53, 55 

(1st Cir. 1993) ("[S]ummary judgment targets should be secure

in the knowledge that they will have at least ten days in

which to formulate and prepare their best opposition.");

Melanson v. Caribou Reefers, Ltd., 667 F.2d 213, 214 (1st 

Cir. 1981). Indeed, "the purpose of Rule 56(c) is to allow a

party to have a meaningful opportunity to challenge a summary

judgment motion." Cia. Petrolera Caribe, Inc. v. Arco 

Caribbean, Inc., 754 F.2d 404, 409 (1st Cir. 1985) (internal 

quotation marks and citation omitted).4

 

4. We note that, while Rule 56(c) refers to a "hearing" in
relation to the ten day proviso, the rule does not require
oral argument in connection with the motion. See Cia. 
Petrolera Caribe, 754 F.2d at 411 (explaining that the motion 
may be "heard" on the papers).

-6- 6

The Union filed its motion for summary judgment on

Monday, June 17, 1996. Excluding the day on which the motion

was filed as well as the intervening Saturday and Sunday, see 

Fed. R. Civ. P. 6(a), the ten-day requirement afforded

Delgado-Biaggi until the end of the business day Monday, July

1, to submit his opposition. By ruling on the morning of

July 1, before Delgado-Biaggi could present his opposing

evidence, the district court denied him the requisite

opportunity to contest the motion. As we previously have

admonished, the "[ten day] notice requirement is not merely

window dressing" and the "proper province" of summary

judgment is "to weed out claims that do not warrant trial

rather than simply to clear a court's docket." Stella, 4 

F.3d at 55. We find that the court erred when it granted

summary judgment before Delgado-Biaggi exhausted his

opportunity to challenge the Union's motion.5

The Union overlooks the procedural flaws

accompanying the entry of summary judgment and endeavors to

persuade us that, in any event, the record reflects no

genuine issue of material fact. In Stella, we "decline[d] to 

delve into the substantive aspects of plaintiffs' cause of

action" because "leapfrogging to the merits would display

 

5. The error is somewhat amplified by the undisputed fact
that, during the June 28 chambers conference, Delgado-Biaggi
notified the district court that he would submit his opposing
evidence the following Monday, July 1.

-7- 7

much the same disregard for established protocol that marred

the district court's performance." 4 F.3d at 55. Assuming

harmless error jurisprudence applied in such cases, we noted

that the peculiar procedural regime the district court

employed in that case thwarted any such analysis. See id. at 

56 n.4.

We acknowledge that this case does not present the

extreme procedural shortcomings involved in Stella. See id. 

at 54 (reversing summary judgment where, on first day of

trial, judge directed defendants to move for summary judgment

and afforded plaintiffs thirty minutes to prepare for

argument).6 The district court's failure to comply with Rule

56(c), however, necessitates that we afford Delgado-Biaggi

"every latitude to show that [the Union] was not entitled to

summary judgment." Melanson, 667 F.2d at 214. Assuming 

arguendo that harmless error analysis applies to Rule 56(c) 

infirmities, we cannot say that the court's noncompliance

with the ten-day notice requirement was harmless.

The sworn statements submitted with Delgado-

Biaggi's motion to reconsider comprise evidence that Local

501 never previously considered a shift-change an automatic

 

6. Although we construed the district court's proceedings in
Stella as involving a sua sponte grant of summary judgment, 
our observations concerning Rule 56(c)'s requirements were
not limited to that summary judgment subset. See 4 F.3d at 
55; see also Berkovitz v. Home Box Office, Inc., 89 F.3d 24, 
29-30 (1st Cir. 1996).

-8- 8

resignation of a shop steward's position and that, in any

event, the Executive Board never exercised its discretion

within the meaning of Article VII(a) to terminate Delgado-

Biaggi's stewardship. Indeed, the Union conceded at oral

argument before us that there was no evidence in the record

to establish that the Board had met to exercise its

discretion.7 This undisputed fact undermines the court's

crucial findings in its summary judgment order and

sufficiently raises the question of a genuine issue of

material fact. Thus, we cannot view the flawed proceedings

below as involving harmless error.

Furthermore, by the Union's own reasoning, its

contention that Delgado-Biaggi fails to state a claim under

the LMRDA depends on the Executive Board's powers and,

ultimately, the disputed question whether the Board met to

exercise its discretion. The Union's other arguments also

raise significant issues neither fully presented nor squarely

addressed below.8 See In re San Juan Dupont Plaza Hotel Fire 

 

7. Without deciding the issue, we note that the language of
Article VII(a) appears to contemplate the uninterrupted
service of a shop steward who changes shifts, absent some
action by the Executive Board.

8. For example, the Union argues that Delgado-Biaggi failed
"to exhaust reasonable hearing procedures (but not to exceed
a four-month lapse of time) within [the union]" before filing
his action. 29 U.S.C. 411(a)(4). This argument
potentially requires factbound determinations regarding the
"reasonableness" of the hearing procedures and the precise
event that triggered the four month period. The district
court never reached this issue and, given the undeveloped

-9- 9

Litigation, 45 F.3d 564, 567, 568 (1st Cir. 1995) (finding 

harmful error where appellate court was not "completely

certain that the merits of the summary judgment issue had

been fully presented to the district court" and where "a

significant legal issue, not squarely addressed by the

district court" remained unresolved due to court's

abbreviated summary judgment proceedings). We are loath to

endorse the district court's disregard for Rule 56(c)

protocol by reaching the merits of these undeveloped matters.

See Stella, 4 F.3d at 55. 

We conclude that, largely because of the absence of

evidence establishing Executive Board action, as well as the

procedural failure below, remand for further proceedings is

the appropriate solution. See In re San Juan Dupont Plaza 

Hotel Fire Litigation, 45 F.3d at 568. 

III. III. 

Conclusion Conclusion 

For the foregoing reasons, we vacate the judgment 

of the district court and remand the case for proceedings 

consistent with this opinion. Costs to appellants. 

 

record, we decline to reach it at this time.

-10- 10