<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 98-1984

                  CHELSEA LEYVA, ETC., ET AL.,

                    Plaintiffs, Appellants,

                               v.

                  ON THE BEACH, INC., ET AL.,

                     Defendants, Appellees.

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

         [Hon. Jos Antonio Fust, U.S. District Judge]

                             Before

                    Torruella, Chief Judge,
                    Selya, Circuit Judge,
             and Acosta,* Senior District Judge.
                                

    Kevin G. Little, with whom Law Offices of David Efron was on
brief, for appellants.
    Edward J. Horowitz, with whom Gerardo A. Quirs Lpez, John Q.
Kelly, and Kelly & Campo LLP were on brief, for appellees.

April 1, 1999

                                
                                

*Of the District of Puerto Rico, sitting by designation.

 SELYA, Circuit Judge.  On September 15, 1995, a tragedy
occurred at a three-story beach house in Santurce, Puerto Rico,
owned by Esther Feliciano Romn (Feliciano).  Because a hurricane
had been forecasted, a gaggle of relatives, neighbors, friends, and
acquaintances had been assisting in securing the beach house.  The
property itself comprised two stories operated by On The Beach,
Inc. (OTB) as the "Numero Uno Guest House," and a third floor that
served as a private residence for Feliciano (who was OTB's
president) and her husband, Chris Laube.
 Jorge Alberto Leyva, variously described as a good friend
of Laube and an employee or prospective employee of OTB, was one of
those who participated in the pre-hurricane preparations.  In the
course of this activity, Leyva fell from a third-floor terrace.  
Five days later, he died from injuries sustained in the fall.
 Invoking diversity jurisdiction, 28 U.S.C.  1332(a),
Leyva's family   all of whom were domiciled in Florida   brought a
wrongful death action in the federal district court against OTB,
Feliciano, and Laube.  The complaint attributed Leyva's demise to
a dangerous condition on the third-floor terrace (principally, the
absence of a railing at one spot) and asserted two main theories of
liability against the several defendants.  First, the plaintiffs
alleged in substance that the decedent had been an employee of the
defendants when injured, and that the defendants had breached a
duty "to provide [him] a safe workplace."  Alternatively, the
plaintiffs alleged in substance that Feliciano and/or Laube were
liable because they failed to maintain their premises in a
reasonably safe condition and allowed (or, indeed, requested) the
decedent to "perform an inherently dangerous task" thereon.
    OTB and Feliciano (in her capacity as an officer,
director, and shareholder of OTB) moved for partial summary
judgment on the ground that, contrary to the plaintiffs'
allegations, the decedent had not been employed by OTB on the date
of the accident.  Their motion addressed only the first of the
plaintiffs' two theories.  It in no way sought brevis disposition
on the second theory, that is, on the claims asserted against Laube
or against Feliciano in her individual capacity.  In a preliminary
margin order dated August 7, 1997, the district court acknowledged
as much; the court wrote:  "This motion only seeks to dismiss the
cause of action against the corporation and the cause of action
against E. Feliciano in her corporate capacity."  The margin
notation went on to pledge that "[t]he court will address the
motion accordingly."
    The plaintiffs opposed the defendants' motion for partial
summary judgment, and the court eventually took it under
advisement.  On July 7, 1998, the court reneged on its earlier
pledge; in a comprehensive opinion, it not only granted partial
summary judgment as requested in the motion papers but also entered
judgment against the plaintiffs on all remaining claims.  SeeLeyva v. On The Beach, Inc., Civ. No. 96-2116 (JAF), slip op. (July
7, 1998) (unpublished).  The plaintiffs do not challenge the entry
of summary judgment in favor of OTB and Feliciano in her corporate
capacity, but, rather, restrict their appeal to the court's
treatment of the individual liability claims.
    We need not linger long.  To be sure, district courts
possess the power to grant summary judgments on their own
initiative.  See Celotex Corp. v. Catrett, 477 U.S. 317, 326
(1986); Berkovitz v. Home Box Office, Inc., 89 F.3d 24, 29 (1st
Cir. 1996).  But unbesought summary judgments can prove problematic
in the absence of proper procedural protections.  To alleviate
difficulties of this sort, we have counseled caution in the use of
that technique.  See, e.g., Jardines Bacata, Ltd. v. Diaz-Marquez,
878 F.2d 1555, 1561 (1st Cir. 1989) (warning, in regard to suasponte summary judgments, that "unnecessary haste frequently
results in more leisurely repentance").  Moreover, we have placed
two constraints on a district court's authority to grant summary
judgment sua sponte:
    First, a district court ordinarily may order
    summary judgment on its own initiative only
    when discovery is sufficiently advanced that
    the parties have enjoyed a reasonable
    opportunity to glean the material facts.  
    Second, the court may enter summary judgment
    sua sponte only if it first gives the targeted
    party appropriate notice and a chance to
    present its evidence on the essential elements
    of the claim or defense.

Berkovitz, 89 F.3d at 29 (citations omitted); accord Stella v. Town
of Tewksbury, 4 F.3d 53, 55 (1st Cir. 1993).
    In the instant case, the parties disagree about the
status of pretrial discovery at the time the district court acted,
and, thus, it is unclear whether the first condition precedent to
a sua sponte summary judgment was met.  We may skirt that
imbroglio, however, for both of the Berkovitz conditions ordinarily
must be fulfilled in order for a sua sponte summary judgment to
withstand scrutiny   and in this case, the second condition was
never satisfied.
    In the context of a sua sponte summary judgment, "notice"
means that the targeted party "had reason to believe the court
might reach the issue and received a fair opportunity to put its
best foot forward."  Jardines Bacata, 878 F.2d at 1561.  The court
below gave no such notice.  Prior to making the spontaneous ruling,
it never informed the plaintiffs that it was considering a judgment
that would extirpate their claims against Laube and/or Feliciano in
her individual capacity.  By the same token, it never invited the
plaintiffs to assemble and proffer their best evidence in
connection with those claims.  To the contrary, the court's margin
order, inscribed well before it ruled on the defendants' motion,
stated in no uncertain terms that its decision would conform to the
limited scope of the motion.  When a court announces that it will
follow a procedural course, the parties are entitled to rely on
that announcement unless and until the court signals an impending
change and affords a reasonable opportunity to regroup.  SeeBerkovitz, 89 F.3d at 30; Stella, 4 F.3d at 55-56.  The court's
failure to adhere to these guidelines requires vacation of the
challenged portion of the judgment below.
    The defendants' principal rejoinder is that notice would
have been a futile exercise because the plaintiffs have no case:  
the accident was unforeseeable, and pretrial discovery has
unearthed nothing that would show negligence on Feliciano's or
Laube's part.  That may well be true.  From the pleadings and the
briefs, the plaintiffs' case appears to be an uphill climb.  But
courts contemplating the entry of summary judgment cannot simply
presume that plaintiffs will lose difficult cases and act
accordingly.  Cf. Greenburg v. Puerto Rico Maritime Shipping Auth.,
835 F.2d 932, 936 (1st Cir. 1987) ("Fed. R. Civ. P. 56 does not ask
which party's evidence is more plentiful, or better credentialled,
or stronger.").  When, as now, the question comes down to one of
fact, a plaintiff is entitled to advance warning that the nisiprius court is considering terminating his case by means of summary
judgment, a fair opportunity to marshal whatever evidence he can
muster, and a chance to put forward his assembled evidence, along
with developed legal argumentation, in an effort to persuade the
trier that a full-blown trial is warranted.  When a trial court
fails to furnish such notice and pretermits the plaintiff's
presentation, it would be unseemly for an appellate court to
require the plaintiff to go outside the record and make an
affirmative showing that his claim is viable.  In all but the most
unusual cases, the record underlying that sort of fact-intensive
analysis must first be constructed in the district court.
    We need go no further.  Because the lower court did not
afford the plaintiffs adequate notice and a suitable opportunity to
be heard before it exceeded the scope of the motion that was
pending before it, we vacate so much of the court's order as
purports to enter judgment in favor of Laube, Feliciano in her
individual capacity, and their respective insurers, see supra note
1.  We do not foreclose the possibility of summary judgment should
the defendants so move, nor do we take any view as to the likely
outcome of the case upon further proceedings below.

Vacated in part and remanded.  Costs to appellants.

</body>

</html>