United States Court of Appeals,

Fifth Circuit.

No. 96-40583

Summary Calendar.

Frank MILLAR, Plaintiff-Appellant,

v.

Scott HOUGHTON, Trooper, et al., Defendants,

Scott Houghton, Trooper;  Fnu Garrett, Trooper;  Pat Golden,
Officer, Defendants-Appellees.

June 24, 1997.

Appeal from the United States District Court for the Eastern
District of Texas.

Before WISDOM, EDITH H. JONES and BENAVIDES, Circuit Judges.

WISDOM, Circuit Judge:

The plaintiff, Frank Millar, brought this 42 U.S.C. § 1983
action against police officers Scott Houghton, Charles Garrett, Pat
Golden, and Curtis Amyx alleging wrongful arrest, excessive force
used during the arrest, and state law claims of assault, battery,
and intentional infliction of emotional distress.

The following facts are not disputed.  Around 10:00 p.m.  on
an evening in January 1993, Millar and his father drove to Millar's
laundromat in Sanger, Texas.  Upon arriving, Millar noticed Texas
State Trooper Houghton engaged in a routine traffic stop close to
the rear of the building.  While his father went inside, Millar
watched Houghton from the rear of the building.  The traffic stop
escalated into a search of the vehicle.  Millar continued to watch
and called his wife with a walkie-talkie type device.

1

Officer Golden arrived during Houghton's questioning of the driver, and Houghton informed him that someone was watching from behind the bushes near the building. Alerted by the noise of the walkie-talkie, both Golden and Houghton shone their flashlights toward Millar. As Houghton and Golden began approaching Millar, Millar began backing up and threw the case of the walkie-talkie to the ground, but he continued to hold the device in his hand.

At this point the parties' recollections diverge. According to Houghton, Millar refused all commands to stop, was holding the device in one hand, and had the other hand concealed in his pocket, prompting Houghton and Garrett to display their guns. According to Millar, he did not hear any commands and never put his hands in his pockets. Millar contends that he had both hands in the air, and that he turned to place them on the building, when the officers approached and began striking him. According to Houghton, the officers simply wanted to frisk him for weapons, but Millar provoked the officers to physically position him by refusing all commands. A scuffle broke out and Millar landed on the ground near an air conditioner compressor.

At this time, Millar's father exited the laundromat, and officer Garrett and other officers arrived. Millar's wife and mother arrived shortly thereafter. Houghton, Golden, and Garrett attempted to bring Millar to his feet, but he resisted by clinging to the compressor. The officers then used force to bring Millar to his feet and restrain him. Eventually, he was handcuffed and taken to an emergency room.

Early in the case, defendants Golden and Amyx filed a joint motion to dismiss and/or for summary judgment, arguing that Millar's claims could not defeat a defense of qualified immunity and that there was no genuine issue of fact to support a claim of wrongful arrest, excessive force, or intentional infliction of emotional distress against Golden or Amyx. The district court granted summary judgment in favor of defendant Amyx, but denied the motion for Golden. No one contests the summary judgment dismissing Amyx. Defendants Houghton and Garrett jointly filed a similar motion for summary judgment sometime later, arguing additionally that the evidence did not sufficiently support the significant injury element of Millar's claim of excessive force. The district court found that, even if the plaintiff were required to show significant injury as an element of his excessive force claim, there was enough evidence of significant injury to present the issue to a jury. Furthermore, the court found sufficient evidence to raise a dispute regarding whether the force used was excessive.

Following the denial of defendants' motions for summary judgment, the parties took the deposition of Dr. Gary Watts, a psychiatrist who treated Millar three times in the years following the incident. Dr. Watts stated that Millar had a pre-existing paranoid delusional condition, particularly with law enforcement agencies. According to Dr. Watts, Millar believed that police officers and others were conspiring to harm him. Millar experienced anxiety whenever seeing a police officer and would be curious and highly suspicious in the presence of an officer. Dr.

Watts testified that this condition could have contributed to Millar's resistance to the defendants' approach and commands.

Soon after the deposition, Millar's attorney filed a motion to withdraw as counsel. Millar's attorney attached a copy of the deposition to the motion and stated that he had discussed the status of the case with Millar and that Millar had discharged him. Millar's attorney further stated in his motion that, given Dr. Watts' testimony, he could no longer represent Millar in good faith. No counsel was substituted in the motion, but the motion and its certificate of service indicate that Millar was forwarded a copy of both the motion and Dr. Watts' deposition. The district court granted the motion to withdraw. Also, the district court, on its own motion, and without giving notice to Millar, vacated its prior orders denying summary judgment and granted summary judgment in favor of all defendants. The district court then issued a final judgment dismissing the case with prejudice. In vacating its prior orders and granting summary judgment against Millar, the court stated:

> On the basis of Mr. Millar's affidavit, the Court has previously denied Defendants' motion for summary judgment. Having reexamined the Defendants' motion in light of the information regarding Millar's mental condition, the Court finds Mr. Millar's affidavit to be unreliable and insufficient to create a fact issue in this case.

With new counsel, Millar appeals the district court's grant of summary judgment and the dismissal of his case. Millar contends that the district court erred in reversing its prior denial of summary judgment based on new evidence without giving Millar notice or an opportunity to respond. We agree.

4

Under Fed.R.Civ.P. 56(c), a party must be served with a motion for summary judgment at least 10 days before a court grants the motion against him. Similarly, a party must be given at least 10 days notice before a court grants summary judgment *sua sponte*.[1] This requirement places a party on notice that he is in jeopardy of having his case dismissed and affords him the opportunity to put forth evidence to show precisely how he intends to prove his case at trial.[2]

Millar argues that the district court improperly granted summary judgment *sua sponte* without giving him proper notice under Rule 56(c). In this case, however, the district court did not grant summary judgment *sua sponte*. The court reconsidered and vacated its prior denial of summary judgment.

Houghton and Garrett argue that a court retains jurisdiction over a denial of summary judgment and may reverse its decision at any time without giving notice. In support of their contention, they cite *Trustees of Sabine Area Carpenter's Health & Welfare Fund v. Don Lightfoot Home Builder, Inc.,*[3] and *McKethan v. Texas Farm Bureau.*[4] These cases, as well as *Lavespere v. Niagara Machine and Tool Works,*[5] hold that a denial of summary judgment is an

---

[1]*N.L. Industries, Inc. v. GHR Energy Corp.,* 940 F.2d 957, 965 (5th Cir.1991).

[2]*Id.,; accord, Stella v. Town of Tewksbury,* 4 F.3d 53, 55 (1st Cir.1993).

[3]704 F.2d 822, 828 (5th Cir.1983).

[4]996 F.2d 734, 738 n. 6 (5th Cir.1993).

[5]910 F.2d 167, 184-85 (5th Cir.1990).

5

interlocutory order, which the court may reconsider and reverse any time before entering final judgment. These cases do not, however, decide whether the parties need to receive notice, or whether a party should be given an opportunity to respond to new evidence upon which the court bases its decision to vacate and reverse its prior denial of summary judgment.

In *Bon Air Hotel v. Time,*[6] this court reviewed the district court's reversal of a prior denial of summary judgment. In *Bon Air Hotel,* the judge who denied summary judgment retired, and his successor requested comments on whether the court had authority to reconsider and reverse the prior order denying summary judgment. After receiving comments from both parties, the court vacated the prior order and entered summary judgment. This court, referring to the notice requirements of Rule 56(c), affirmed the summary judgment, noting that the parties had received proper notice and were afforded an opportunity to present evidence demonstrating an issue of material fact.[7]

*Bon Air Hotel* and the language of Rule 56(c) indicate that an adverse party must be given an opportunity to respond to a motion for a summary judgment and the evidence upon which the motion is based. Even in the cases cited by the appellees, the losing parties had the opportunity to respond before judgment was rendered

---

[6]426 F.2d 858 (5th Cir.1970).

[7]*Id.* at 862-63.

6

against them.[8]    Accordingly, we hold that, when a court is considering vacating and reversing a prior denial of summary judgment on the basis of newly presented evidence, the court must give the adverse party notice and an opportunity to respond to such evidence.   This requirement will provide the party an opportunity to refute the evidence and demonstrate how he intends to prove his case at trial.

Appellee Golden argues that, because it was Millar's own attorney who submitted the deposition to the court, Millar was not entitled to notice or an opportunity to respond.   Golden reasons that the actions of Millar's withdrawing attorney were Millar's

---

[8]In *Trustees of Sabine,* the defendants, on the day of trial, orally renewed their previously denied motion for summary judgment on the same grounds previously presented to the court.   The plaintiffs did not object, and argued the motion orally.   After argument, the district court vacated its prior denial of summary judgment and granted summary judgment.   We found that the district court's action was consistent with the policy of 56(c).

> [Rule 56(c) ] is intended to give the opposing party opportunity to prepare responsive pleadings and counter affidavits.   The trustees were not denied that opportunity.   Home Builders renewed motion for summary judgment was based on the same ground it had urged previously....   The trustees had already filed a written response to this motion.   Although they did not submit affidavits or additional depositions, *they had the opportunity to do so.*

*Trustees of Sabine,* 704 F.2d at 828 (citation and quotation omitted, emphasis added).

In *McKethan,* a previously denied summary judgment was granted after a trial on the merits, and thus after the parties had submitted all their evidence. *McKethan,* 996 F.2d at 738.

In *Lavespere,* the plaintiff filed a response to the renewed motion for summary judgment. *Lavespere,* 910 F.2d at 171.

7

actions, and thus Millar needed no opportunity to respond to the deposition, which, in effect, he himself presented to the court. Golden's argument is without merit. Millar's attorney had already been discharged, and we have found no authority suggesting that the actions of a discharged attorney when filing a motion to withdraw should be considered the actions of the party.

Accordingly, we VACATE the district court's order dismissing the plaintiff's case against defendants Golden, Houghton, and Garrett; we VACATE the district court's order vacating its prior order denying summary judgment and granting summary judgment in favor of defendants Golden, Houghton, and Garrett; and we REMAND to the district court for further proceedings consistent with this opinion.